*635 OPINION.
TURNER:
The first claim made by the petitioner is that a portion of the Mills Process stock disposed of was community property and that the gain derived and the dividends received on the stock of Mills Alloys, Inc., which replaced the stock claimed to have been community stock, should be treated as community income and not as the individual income of the petitioner. It is not contended that any portion of the 5,000 shares of Mills Process stock issued to the petitioner' in exchange for patents, nor stock purchased by him *636 before bis marriage was community property. Further, the petitioner concedes that the shares purchased after marriage were petitioner’s separate property to the extent that they were purchased with proceeds of a loan upon his separate property. It is contended, however, that 638.3665 shares of the 1,654 shares purchased after marriage were community property, leaving the remaining 1,015.6335 shares to be classified as the separate property of the petitioner. These amounts are arrived at by applying to the 1,654 shares purchased, the same ratios that 1,154 shares, the amount of shares purchased with the first loan, all of which were deposited as collateral, and 1,836 shares deposited as collateral out of petitioner’s separate property, bear to the total 2,990 shares of collateral. Examination of the petitioner’s method of computing the number of shares belonging to the community discloses at once the weakness of his position on the facts of this case. If the number of community shares purchased is in the same ratio to the total number of shares purchased as the number of community shares deposited as collateral is to the total number of shares of collateral, then by the petitioner’s own conclusion only 638.3665 of the total collateral shares were community shares and the remaining collateral, 2,351.6335 shares, was the separate property of the petitioner. It then follows that a recomputation of the ratios would be required. The result of such a second computation would obviously disclose a correspondingly smaller portion of the total number of shares purchased as the number of community shares. On each recomputation the number of community shares would dwindle until substantially no amount would be indicated as community property.
The answer to our problem is to be found in the facts and the law, however, and not in the strength or weakness of some method of computation. As we understand the law of California, property purchased partly with the separate funds of a spouse and partly with community funds is separate property and community property in the same proportion that the purchase price is made up of separate
and community funds, In re Bauer’s Estate, 79 Cal. 304; 21 Pac. 759; Heney v. Pesoli, 109 Cal. 53; 41 Pac. 819, and property purchased with borrowed money is separate and community property to the extent that the loans are based upon the credit of the individual spouse or upon the credit of the community. Carle v. Heller, 18 Cal. Ap. 577; 123 Pac. 815; Schuyler v. Broughton, 70 Cal. 282; 11 Pac. 719; Dyment v. Nelson, 166 Cal. 38; 134 Pac. 988. In this case the facts warrant only one conclusion, and that is that the loans procured for the purchase of the stock in question were made upon the sole and individual credit of the petitioner. As a preliminary detail before the loans were made, the petitioner established his *637 personal credit with the California Bank by submitting an individual financial statement. No claim is made that the community owned any Mills Process stock prior to the purchases in December 1928. The only stock deposited as collateral, except the stock purchased from the proceeds of the first loam, belonged to the petitioner individually. Furthermore, each of the notes recited on its face that the petitioner, the maker of the note, was the sole owner of the stock pledged as collateral. The community risked nothing at any stage of the transaction and we find that it furnished no part of the credit upon which either loan was made. On the first issue the respondent is sustained.
In reaching the above conclusion we have not overlooked our opinion in Alanson Weeks, 31 B. T. A. 627. In that case the property in question was purchased with the proceeds of a loan made by the husband on his personal note. The- only collateral posted was the property purchased. There was nothing further to show that the funds were borrowed on the faith and credit of his separate property, nor was there any evidence that he was not in fact acting on behalf of the community. Under those facts wTe there held that the presumption that property purchased after marriage was to be treated as community property had not been overcome by extrinsic evidence. In this case, as we have pointed out, the facts do show that the loan, out of the proceeds of which the stock in question was purchased, was intended to be, and was in fact, made upon the faith and credit of the husband’s separate property, and not upon the faith and credit of the community.
Our first problem in deciding the remaining issues is to determine the exact nature of the transaction whereby the petitioner disposed of his Mills Process stock. The respondent, in determining the deficiency, treated the disposition by Mills Process of its assets for the stock of Mills Alloys, Inc., as a reorganization within the meaning of section 112 (i) (1) (A)[1] of the Revenue Act of 1928. He also assumed the exchange by the stockholders of Mills Process for the stock of Mills Alloys, Inc., in accordance with the provisions of section 112 (b) (3)[2] of the act and thereafter a sale by the stock *638 holders of a portion of the stock of Mills Alloys, Inc., so received. In connection with that sale he applied the first in, first out rule and treated the major portion of the stock sold by the petitioner as being! held in place of the 5,000 shares of Mills Process stock acquired by him in exchange for patents which had no cost basis. This stock, having been acquired at the time the patents were turned in to Mills Process in 1925, more than two years prior to the disposition of Mills Alloys, Inc., stock in 1929, was treated as capital assets. So far as the record shows, the petitioner in making his return also treated the sale of stock of Mills Alloys, Inc., as a sale by the stockholders of Mills Process rather than a sale by the corporation prior to liquidation, and no exception to the determination of the respondent in that respect was taken in the petition filed. The petitioner did allege, however, that the respondent erred in applying the first in, first out rule, claiming that the stock of Mills Alloys, Inc., was received in exchange for the entire block of his stock in Mills Process and that the cost of the latter stock should be averaged to determine the cost basis of the stock of Mills Alloys, Inc., received therefor and sold to the syndicate. Christian W. Von Gunten, 28 B. T. A. 702; affd., 76 Fed.(2d) 670; Olive Hume Oliver, 30 B. T. A. 1381; affd., 78 Fed. (2d) 561.
At the time of filing his brief the respondent also filed a motion requesting leave to file an amended answer to conform the pleadings to the proof offered at the hearing. In the proposed amendment to his answer, the respondent alleged in the alternative that, according to the proof, the sale of 30,000 shares of class A stock and 30,000 shares of class B stock of Mills Alloys, Inc., which had been received by Mills Process in reorganization, had been sold by that corporation prior to dissolution and that the stockholders of Mills Process in fact exchanged their Mills Process stock for stock of Mills Alloys, Inc., and cash. On these facts it was argued that the petitioner is taxable on the gain realized from the exchange, but only to the extent of the cash received.
The petitioner opposed the motion to amend, first, on the ground that it was not timely and did not meet the requirements of the rules of the Board, and, second, that under the theory advanced by the respondent it would be necessary for the petitioner to present additional proof, particularly with reference to the fair market value of the stock of Mills Alloys, Inc., in order to show the amount of gain realized. By order entered on March 28, 1936, the motion of the respondent was granted, Pierce Oil Corporation, 30 B. T. A. 469, and the petitioner was allowed a period of 45 days for the filing of a reply and a request for further hearing, if further hearing was desired. No reply was filed and no request for further hearing has been made.
*639 The evidence in this case clearly shows and we have found as a fact that upon the receipt by Mills Process of the stock of Mills Alloys, Inc., Mills Process sold 30,000 shares of class A stock, and 30,000 shares of class B stock of Mills Alloys, Inc., for $660,000 in cash, and a right to share in a pool created from 20,000 shares of the class B stock sold, to the extent of 50 percent of the net proceeds therefrom. Mills Process was then dissolved and the stockholders of that company surrendered their stock in liquidation, receiving for each share of Mills Process stock, one share of class A stock and 5 shares of class B stock of Mills Alloys, Inc., $66 in cash, and a further right to share pro rata in the proceeds from the pool which had been created with 20,000 shares of class B stock. The proceeds from the pool were distributed in the taxable year, and for his 6,555 shares of Mills Process stock the petitioner received 6,555 shares of class A stock and 32,175 shares of class B stock of Mills Alloys, Inc., and $473,-159.01 in cash.
There is no question that Mills Process exchanged all of its assets for stock of Mills Alloys, Inc., and that this transaction constituted a reorganization within the meaning of section 112 (i) (1) (A), supra. It is also clear that the petitioner exchanged his Mills Process stock in accordance with the plan of reorganization for stock of Mills Alloys, Inc., and cash. This transaction falls squarely within the provisions of section 112 (b) (3), supra, and section 112 (c) (1)[3] of the act, under which the gain realized on such an exchange is taxable, but in an amount not in excess of the sum of money received. The entire holdings of the petitioner in Mills Process, including the 100 shares sold in January prior to the reorganization, had a cost basis of only $16,550. The gain realized on the exchange was the difference between the cost of the petitioner’s Mills Process stock exchanged and the fair market value of the stock of Mills Alloys, Inc., received in exchange, plus $473,159.01 in cash. No proof was specifically directed to the question of the fair market value of the stock of Mills Alloys, Inc., but the facts show that the syndicate paid $660,000 for 30,000 shares of class A stock and 30,000 shares of class B stock just prior to the date on which the petitioner made his exchange. Furthermore, according to the agreement the 20,000 shares of class B stock placed in the pool for safe to the public could not be sold for an amount less than $7.50 per share, and, although we do not know the exact price at which that stock was' sold, we do know that it was sold in accordance with the terms of *640 tlie agreement, and the proceeds were distributed in the dissolution of Mills Process along with the cash previously received from the syndicate. On the record there can be no doubt that the fair market value of the 6,555 shares of class A stock and 32,775 shares of class B stock of Mills Alloys, Inc., received by the petitioner in exchange for his. Mills Process stock, was greatly in excess of his cost basis for the Mills Process stock. It follows that the gain realized on the transaction exceeded the amount of cash received, and, under section 112 (c) (1), supra, the gain so realized is recognized and taxable to the extent of $473,159.01, the amount of cash received.
Since it appears that the taxable transaction here was a disposition by the petitioner of his Mills Process stock and not a disposition by him of the stock of Mills Alloys, Inc., after it was received in exchange for his Mills Process stock, there is no occasion for any confusion or difference on the capital gain issue. The dates on which the various shares of Mills Process stock were acquired by the petitioner are not in dispute and the amount of gain which constitutes capital gain and that which constitutes ordinary gain can be worked out on recomputation.
Reviewed by the Board.

Decision will be entered under Rule 50.

(i) Definition of reorganization. — As used in this section and sections 113 and 115—
(1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), * * *

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
* * * * * * 4
(b) Exchanges "solely in hind.— ■
* * * * * * 4
(3) Stock fok stock on eeobganization. — No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

 Sec. 112. (e) Gain from exchanges not solely in kind.—
(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.